IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

GERRITSEN V. GERRITSEN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STEVEN GERRITSEN, APPELLANT AND CROSS-APPELLEE,
V.
SUZANNE GERRITSEN, APPELLEE AND CROSS-APPELLANT.

Filed May 28, 2013.    No. A-12-353.

Appeal from the District Court for Adams County: TERRI S. HARDER, Judge. Affirmed.

Vikki S. Stamm, of Stamm & Associates, P.C., L.L.O., for appellant.

Gregory C. Damman, of Blevens & Damman, and Robert J. Parker, Jr., of Seiler & Parker, P.C., L.L.O., for appellee.

SIEVERS, PIRTLE, and RIEDMANN, Judges.

PIRTLE, Judge.

## INTRODUCTION

Steven Gerritsen appeals, and Suzanne Gerritsen cross-appeals, from an order of the district court for Adams County dissolving the parties' marriage. Steven and Suzanne both challenge various aspects of the trial court's division of the marital estate and the court's failure to award either party attorney fees. Steven also argues that he should have been awarded alimony. Because we find no merit to either party's assignments of error, we affirm.

## BACKGROUND

Steven and Suzanne met through an Internet dating site in 2008. At the time, Steven lived in Nebraska and had his own business as an auctioneer and appraiser. Suzanne lived in Michigan and was a special education teacher. Steven proposed in December, and they got married in June 2009. The parties separated in February 2010, and Steven filed a complaint for dissolution of marriage in April. Suzanne subsequently filed an answer and cross-complaint. No children were born during the marriage.

- 1 -

At the hearing on the dissolution action, Steven testified that in April 2009, prior to the marriage, he and Suzanne decided to buy property in Ayr, Nebraska. The parties took out a loan with Harvard State Bank to purchase the property, and Steven issued a check for $10,000 to the bank as a downpayment for the loan. The bank also took a security interest in a house owned by Suzanne, located in Prosser, Nebraska. The Prosser house was previously owned by Steven's mother, but she deeded it to Suzanne shortly after the parties were married. The agreement with the bank was that Steven was going to fix up the Prosser house and then sell it, and the proceeds would be applied to the loan on the Ayr property.

The Ayr property consisted of a house and 87 acres of land. At the time the parties purchased the Ayr property, 50 acres of the property was farm ground and the remaining property was pasture. Steven testified that he made extensive improvements to the land, such as leveling, terracing, and tree removal, which increased the number of acres that could be used for farm ground from 50 to 77. He testified that he took out additional loans to pay for the improvements.

Steven and Suzanne purchased multiple animals after they were married, with the intent of opening a petting zoo for handicapped children on the Ayr property. The animals included horses, goats, alpacas, donkeys, a bull, and a potbellied pig. After the parties separated and during the pendency of the divorce, Steven cared for the animals on his own.

Following the hearing, the trial court entered a decree dissolving the parties' marriage and dividing the marital estate. Specifically, the trial court treated the Prosser house as a marital asset and awarded it to Suzanne. It ordered that the Ayr property be sold and that any remaining balance, after the loan from Harvard State Bank is paid, be divided equally between the parties. Although both parties claimed that they should receive credit for the $10,000 downpayment on the Ayr property, the trial court awarded neither party a premarital offset. The trial court also did not allow Steven any credit for improvements he made to the Ayr property, and it denied his claim to be reimbursed for expenses he incurred in caring for the parties' animals.

As to personal property, the court found that Steven had disposed of certain premarital items of Suzanne's, including a carousel horse, and entered judgment against Steven for the value of those items. The trial court also entered judgment against Steven for unpaid monthly fees for the storage unit where Steven had stored Suzanne's personal property. Finally, the trial court denied Steven's request for alimony and ordered each party to pay their own attorney fees.

Both parties filed motions for new trial, which were denied.

ASSIGNMENTS OF ERROR

Steven assigns that the trial court erred in (1) determining that the Prosser property was marital property, rather than his separate property; (2) failing to give him credit for the $10,000 downpayment on the Ayr property; (3) failing to give him credit for improvements he made to the Ayr property; (4) failing to equally split all the debt owed on the Ayr property; (5) failing to order Suzanne to reimburse him for money spent caring for the parties' animals; (6) entering judgment against Steven for the monthly storage fee for Suzanne's personal property; (7) finding that a carousel horse, valued at $2,000, was a premarital asset of Suzanne's; (8) failing to award him alimony; and (9) failing to award him attorney fees.

On cross-appeal, Suzanne assigns that the trial court erred in (1) determining that the Prosser property was marital property, rather than her separate property; (2) failing to find that the $10,000 downpayment on the Ayr property was her premarital property; and (3) failing to award her attorney fees.

## STANDARD OF REVIEW

In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion. *Jensen v. Jensen*, 20 Neb. App. 167, 820 N.W.2d 309 (2012).

## ANALYSIS

*Prosser House.*

Both parties assign that the trial court erred in determining that the Prosser house was a marital asset. Steven claims it should be his separate property because it was a gift from his mother. Suzanne claims that it should be her separate property, because Steven's mother gave it to her alone and it was deeded to her individually.

Based on the testimony of Steven's mother, she transferred the property to Suzanne shortly after the parties were married for two reasons. The first reason was to welcome Suzanne to the family. The other reason was to allow Steven and Suzanne to use the property as collateral in purchasing the Ayr property and to avoid Steven's creditors in doing so. A former vice president of Harvard State Bank also testified that the Prosser house was pledged as collateral when Steven and Suzanne obtained the loan for the Ayr property. He testified that Steven and Suzanne were fixing up the Prosser house at the time and were going to sell it, with the proceeds being used to pay down the loan on the Ayr property. The bank vice president testified that Suzanne was present and agreed to this arrangement in June 2009 when the loan was signed.

When awarding property in a dissolution of marriage, the property acquired by one of the parties through gift or inheritance ordinarily is set off to the individual receiving the inheritance or gift and is not considered a part of the marital estate. *Marcovitz v. Rogers*, 267 Neb. 456, 675 N.W.2d 132 (2004). The burden of proof to show that property is nonmarital remains with the person making the claim in a dissolution proceeding. *Gress v. Gress*, 271 Neb. 122, 710 N.W.2d 318 (2006). The trial court found that based on the "mixed" nature of the transfer, Steven's mother gifted the property to both parties. Therefore, the court treated it as a marital asset. The evidence supports the trial court's determination that the Prosser house was gifted to both parties. Both Steven's and Suzanne's assignments of error challenging such determination are without merit.

*Downpayment on Ayr Property.*

Next, Steven and Suzanne both argue that they should receive credit for the $10,000 downpayment made on the Ayr property, because the funds came from premarital property. The trial court did not award either party a $10,000 premarital offset, finding that neither party proved his or her claim by a preponderance of the evidence.

Steven testified that in April 2009, prior to the parties' marriage, he issued a check for $10,000 to Harvard State Bank as a downpayment on the Ayr property. The check was written on his business account, and he claims the money in the account was his own premarital funds. A copy of the check issued by Steven to the bank was entered into evidence.

In contradiction to Steven's testimony, Suzanne testified that the $10,000 downpayment on the Ayr property was made with her premarital funds. She testified that before the parties' marriage and while she was still living in Michigan, she and Steven discussed the Ayr property and decided to buy it. She testified that Steven told her he needed money for a downpayment, so she sent Steven three valuable rings for him to sell. Steven acknowledged receiving the rings from Suzanne and selling them at an auction. Suzanne claims it was the proceeds from the sale of the rings that were used for the downpayment on the Ayr property. Steven claims, however, that he gave Suzanne cash from the sale of the rings and that that money was not used for the downpayment. He did not remember how much the rings sold for.

The burden of proof to show that property is a nonmarital asset remains with the person making the claim. *Harris v. Harris*, 261 Neb. 75, 621 N.W.2d 491 (2001). Both parties presented evidence to show that they used premarital funds for the $10,000 downpayment on the Ayr property. The evidence is conflicting, and there is no clear answer as to where the $10,000 came from. Accordingly, we cannot conclude that the trial court abused its discretion in finding that neither party met their burden of proof and denying both parties a $10,000 premarital offset for the downpayment.

*Improvements to Ayr Property.*

Steven next assigns that the trial court erred in failing to give him credit for improvements he made to the Ayr property while the parties were separated. Steven testified that he made extensive improvements to the land, such as leveling, terracing, and tree removal, which increased the number of acres that could be used for farm ground. In order to pay for such improvements, he obtained additional loans from Harvard State Bank. He argues that the improvements he made increased the value of the property and that therefore, he should receive more than 50 percent of the proceeds when the Ayr property is sold.

Although Steven testified that he obtained additional loans for the purpose of making improvements to the Ayr property and testified in general about what those improvements were, he failed to present receipts, invoices, or other evidence to show the expenses he incurred with the various improvements.

More important, Steven failed to show that his improvements increased the value of the land. The record contains an appraisal of the land at the time the parties purchased it, showing an appraised value of $280,000, but there is no evidence as to the value of the Ayr property at the time of the hearing.

Because the evidence does not support the conclusion that Steven's improvements increased the property's value, Steven's claim that he should be awarded more than 50 percent of the proceeds from the sale of the Ayr property must fail. This assignment of error is without merit.

*Debt on Ayr Property.*

Steven also assigns that the trial court erred in failing to equally split all the debt owed on the Ayr property, including the loans obtained for improvement. However, he fails to argue this alleged error. In order to be considered by an appellate court, the alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Bedore v. Ranch Oil Co.*, 282 Neb. 553, 805 N.W.2d 68 (2011). Accordingly, we need not address this assignment of error further.

*Expenses in Caring for Animals.*

Steven next assigns that the trial court erred in failing to order Suzanne to reimburse him for money he spent caring for the parties' animals after the parties separated. Steven testified that he took care of these animals without any assistance from Suzanne from February 2010 until November 2011. He claims that during that time, he spent $136,000 to feed the animals and for veterinary services. He argues that Suzanne should have to reimburse him for half of his expenses in caring for the animals.

Steven testified that he kept the animals after the parties separated because he did not believe he could sell the animals during the pendency of the divorce. However, in contrast to that testimony, he also testified that he did sell a couple of the animals during the pendency of the divorce, because they kept getting out of their enclosure.

More important, Steven has failed to present any evidence of the expenses he claims to have incurred. He testified that he spent $136,000 for animal food and veterinary services, but he did not present receipts, invoices, or any proof whatsoever of his expenses.

Steven also testified that his income was reduced during the time he was caring for the animals because caring for them was very time consuming and limited the time he had available to work. His lack of income during the separation is documented by his tax return. However, he did not explain how he was able to pay $136,000 in expenses for the animals when his income was limited.

We conclude that the trial court did not err in failing to order Suzanne to reimburse Steven for money he claims to have spent caring for the parties' animals during the pendency of the divorce.

*Personal Property.*

Steven assigns that the trial court erred in entering judgment against Steven for the monthly storage fee for Suzanne's personal property. During the pendency of the divorce, Steven put Suzanne's personal property in a storage unit. He paid the monthly fee until June 2010 and has not paid the fee since then. Steven testified that he put the property in storage, because mice were ruining it and he was trying to protect it.

Suzanne, on the other hand, testified that Steven put her property in storage after breaking into the Prosser home, where she was living, and taking all of her possessions.

Rather than ordering Steven to pay the balance owed to the storage unit so Suzanne could get her property, the trial court entered a judgment in the amount of $500 (10 months at $50 per month) against Steven and in favor of Suzanne. We find no error in the trial court entering judgment against Steven for the monthly storage fee for Suzanne's personal property.

*Carousel Horse.*

Steven assigns that the trial court erred in finding that a carousel horse, valued at $2,000, was a premarital asset of Suzanne's. Steven claims that he purchased the carousel horse prior to marriage and that it was a gift to his mother, not to Suzanne. Steven admitted that the carousel horse had been at the Prosser house after the parties separated, but that he took it because he did not want her to sell it and that it was at his mother's house. Steven's mother testified that the carousel house was put in her storage shed "some months ago" and that she thought Steven purchased it for her because she collects carousel horses.

Suzanne claims that Steven gave her the carousel horse as a Christmas gift in 2008, before they were married, and that he brought it to Michigan. Steven denied that the carousel horse was a gift to Suzanne and denied taking it to Michigan. However, he admitted to writing Suzanne a note in May 2010 in which he admitted the carousel horse's connection to Christmas and its special meaning.

The evidence shows that Steven purchased the carousel horse before the marriage, that it had a connection to Christmas, and that it had been at the Prosser house until Steven removed it. Based on the evidence, we cannot conclude that the trial court erred in finding that the carousel horse was Suzanne's premarital asset.

*Alimony.*

Steven claims that the trial court erred in failing to award him alimony. He contends he is entitled to alimony because he had to forgo employment opportunities as an auctioneer and appraiser during the time he was taking care of the parties' animals. As previously stated, Steven contends that caring for the animals was very time consuming and limited the time he had available to work, thereby reducing his income. He argues that his 2010 tax return reflects his limited income during the time he was caring for the animals.

Neb. Rev. Stat. § 42-365 (Reissue 2008) provides:

[A] court may order payment of such alimony by one party to the other . . . as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.

The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other criteria enumerated in this section make it appropriate. *Id.* Steven argues that his situation in caring for the animals was an "interruption of personal career," entitling him to alimony.

We conclude that the district court did not err in denying Steven's request for alimony. None of the statutory criteria for an award of alimony are present in this case. This was a very short marriage, and no children were born of the marriage. Both parties had long careers before they met, and they are both able to continue working as they did prior to the marriage. Steven was an auctioneer and appraiser for years before the parties met and continued in that career during the short marriage and while the parties were separated. He indicated at trial that he planned to continue working as an auctioneer and appraiser. Even if his income was affected

during the time he was caring for the animals, it will not be affected any longer, as he is no longer caring for the animals. There is nothing in the record to support Steven's request for alimony.

*Attorney Fees.*

Finally, Steven and Suzanne both assign that the trial court erred in failing to award either of them attorney fees. Both parties presented exhibits at trial showing the attorney fees they have incurred. Suzanne's exhibit shows she had incurred $28,635 in attorney fees at the time of trial, part of which amount she attributes to Steven's "unreasonable obstructive and delaying tactics." Steven's exhibit shows that he had incurred $10,783.01 in attorney fees.

The award of attorney fees depends on multiple factors that include the nature of the case, the services performed and results obtained, the earning capacity of the parties, the length of time required for preparation and presentation of the case, customary charges of the bar, and general equities of the case. *Sitz v. Sitz*, 275 Neb. 832, 749 N.W.2d 470 (2008).

Based on our de novo review of the record, we conclude that the trial court did not abuse its discretion in failing to award either party attorney fees.

## CONCLUSION

Finding no merit to the errors assigned on appeal and cross-appeal, we affirm the judgment of the district court dissolving the marriage, dividing the property between the parties, and refusing to award alimony and attorney fees.

AFFIRMED.